IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TERRANCE BONNER, | : | |
| --- | --- | --- |
| Petitioner, | : | 1:15-cv-2489 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| WARDEN R.A. PERDUE, | : | |
| Respondent. | : | |

## **MEMORANDUM**

### **December 27, 2017**

Presently before the Court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Terrance Bonner ("Bonner"), a federal inmate housed at the Federal Correctional Institution at Schuylkill, Minersville, Pennsylvania. He alleges that his due process rights were violated in the context of a disciplinary proceeding. The petition is ripe for disposition and, for the reasons that follow, will be denied.

**I.  BACKGROUND**

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent

intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3.

Regulations require the Warden to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full time staff member to represent him at the DHO hearing. *Id.* at § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to submit names of requested witnesses and have them called to testify and to present documents. *Id.* at § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." *Id.* § 541.8(f)(2). The DHO need not call

2

repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* at § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* at § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

On May 20, 2015, upon conclusion of an investigation conducted by Lieutenant J. Vuksta, Bonner received Incident Report 2676108, charging him with violation of Prohibited Act Code 111, "Introduction of Narcotics" which occurred while Bonner was housed at the Federal Correctional Institution at Elkton ("FCI-Elkton"), Lisbon, Ohio. (Doc. 7-1, pp. 14-15). The Incident Report, authored by Lieutenant Butts, contains the following description of the incident:

> (Date: 1-27-15 Time: 10:00 a.m. Staff became aware of incident)[.] A SIS investigation concluded that on October 5, 2014, inmate Terrence Bonner, Reg. No. 07168-068, introduced a green leafy substance that tested positive for Amphetamines (suspected to be K2).

3

> On October 5, 2014, at approximately 11:38 a.m. inmate Bonner was observed putting an object in his mouth in the FCI Elkton visiting room. A review of Bonner's email message revealed a conversation regarding the amount of drugs and money in a coded email. Bonner was placed in an observation cell and provided two 3" tubular balloons containing a green leafy substance that tested positive for Amphetamines.

(Doc. 7-1, p. 14).

Bonner received written notice of the charges against him on May 20, 2015. Staff advised him of his rights on the same date. (*Id.* at 15). When questioned about the incident, he responded he had "Nothing to say." (*Id.*) The matter was referred for a UDC hearing during which he stated "I'm not guilty of this and never provided 2[,] 3 inch tubular balloons." (*Id.*) The UDC referred the matter to the DHO because "UDC Sanctions not avail. For Code 111." (*Id.* at 14).

On May 22, 2015, Bonner, signed the "Inmate Rights at Disciplinary Hearing" form and "Notice of Discipline Hearing Before the (DHO)" form. (*Id.* at 16, 17). At that time, he declined representation by a staff member and indicated that he did not wish to call witnesses. (*Id.* at 17).

Initially, during the June 1, 2015 disciplinary hearing, the DHO advised Bonner of his rights; Bonner indicated that he understood them and chose to provide the following statement: "[t]hey alleged that I swallowed something and I was placed on dry cell after the visit." (*Id.* at 18). The DHO acknowledged that staff provided Bonner with written notice of the charges, that he declined the offer

4

of a staff representative, and chose not to call witnesses. (*Id.* at 18). Bonner did not raise any procedural issues or submit documentary evidence. (*Id.*)

The DHO noted the delay in the commencement of the discipline process due to the incident being referred to the Federal Bureau of Investigations and the United States Attorney's Office for criminal prosecution. (*Id.*) He also noted that the agency declined prosecution and referred the matter back to the BOP for disciplinary proceedings. (*Id.*)

In finding that Bonner committed the act as charged, the DHO relied on the Incident Report written by Lieutenant Butts, which Bonner received on May 20, 2015, an investigative report generated as a result of a Special Investigative Services ("SIS") investigation prepared by the investigator, Lieutenant J. Vuksta, dated January 8, 2015, which is corroborated by surveillance footage, phone and email exchanges between Bonner and his visitor, Jillian Poole, and photographs. (*Id.* at 18- 20). The DHO also relied on memoranda prepared by Lieutenant Smith on October 6, 2014, and Officer Gruszecki on October 10, 2014, both of whom monitored Bonner while confined to the medical dry cell and observed two balloons in Bonner's dry cell on October 6, 2014 and TRUFONE (phone) and TRULINCS (email) messages from October 3, 2014, and October 4, 2014. (*Id.*; Doc. 7-1, p. 9, n.3). CCTV surveillance footage from October 5, 2014, and photographs of the confiscated substance with positive test readings were also

5

considered. (Doc. 7-1, p. 9, n.3). The DHO believed the information provided by the staff members involved in this cases as they derived no known benefit by providing false information. The DHO also noted that Bonner neither admitted nor denied the charge. (*Id.* at 20).

In sanctioning Bonner with a disallowance of forty-one days good conduct time, 60 days disciplinary segregation, forfeiture of 108 days of non-vested good conduct time, loss of phone and visiting privileges for eighteen months, and a monetary fine of $205.00, the DHO set forth the following rationale:

> Bonner's introduction of drugs threatened the orderly running of this facility and potentially the safety of both staff and inmates. Drugs are smuggled with the intent of future sale or personal consumption. Violent acts often follow in regard to distribution and payment. Being instrumental in the illegal drug trade while incarcerated indicates Bonner's desire to continue to be involved in criminal activities. Institutional drug trafficking typically compromises the inmate mail and/or telephone system and the visitation area. Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish Bonner for his behavior, while the Loss of Privileges (Phone, Visit and No Contact Visit) and a Monetary Fine is sanctioned in an effort to deter him from this behavior in the future. The DHO finds the charge for code 111 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to the Disallowance of Good Conduct Time based on the offense being a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(*Id.* at 21).

## II.  DISCUSSION

Bonner's claim, that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of his confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.  Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

### A.  Wolff Requirements

#### 1.  Notice

Bonner lodges two challenges to the validity of the incident report based on notice. He contends that the report is invalid because he did not receive the report in a timely fashion. Under 28 C.F.R. § 541.5(a), an inmate will "ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident." Here, the incident occurred in October, but the investigation of the incident did not conclude until January. Thereafter, the matter was referred to the FBI for purposes of considering whether the incident warranted criminal prosecution of Bonner. It was not until after the FBI declined to prosecute that the BOP was able to pursue the administrative disciplinary process. Staff delivered the report to Bonner upon completion of a necessary and careful investigation of the incident. The Court finds no due process violation in this regard. Moreover, *Wolff* simply requires that Bonner receive notice of the charges against him at least twenty-four hours in advance of any disciplinary hearing. In accordance with *Wolff*, he received written notice of the charges on May 20, 2015; his hearing took place on June 1, 2015.

Additionally, during the hearing, the DHO acknowledge the delay in stating the following: "The DHO noted a delay in the discipline process. This was due to the report being referred to the FBI/AUSA for criminal prosecution. The agency declined to prosecute and referred the report back for disciplinary proceedings. The DHO did not believe this delay infringed upon the inmate's ability to defend

himself against the charged behavior, nor was it addressed as an issue." (Doc. 7-1, p. 18). Clearly Bonner did not raise his delay argument or submit any evidence on the issue before the DHO. As such, it is not part of the record and the scope of review is limited to evidence in the record before the DHO. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

He next asserts that the incident report runs afoul of BOP Program Statement 5270.07 and 28 C.F.R. § 541.5(b), because the investigating officer also wrote the incident report. Specifically, the regulations provide that the officer who investigates the incident may not be the employee who reported the incident or otherwise be involved in the incident. *Id.* The record clearly indicates that the incident was investigated by Lieutenant Vuksta and the incident report was authored by Lieutenant Butts.

### 2. Opportunity to Call Witnesses

Bonner also argues that he was denied the opportunity to call witnesses. The record indicates to the contrary. Prior to the DHO hearing, he declined the offer to call witnesses on three occasions. (Doc. 7-1, pp. 15-17). He also declined the offer to call witnesses on the day of his hearing. (*Id.* at 18).

### B. Sufficiency of Evidence

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to

support the decision. *Hill*, 472 U.S. 445, 455 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455.

Bonner also contends that there was a "lack of evidence" to support a finding of guilt. In arriving at a finding of guilt, the DHO specifically relied on the incident report, the investigative report, various memorandums, emails, phone messages, CCTV surveillance and photographs of positive test results. He concluded that "the video footage and documentation of events warrant the charge for the introduction of narcotics." (Doc. 7-1, p. 20). It is clear that the finding of guilt has some evidentiary support in the record before the DHO.

C. **Impartial DHO**

Bonner also loosely states that the DHO was not impartial. (Doc. 1, p. 10). In the context of prison disciplinary proceedings, due process requires that the disciplinary tribunal be sufficiently impartial. *Meyers v. Alldredge*, 492 F.2d 296, 305–07 (3d Cir.1974); *see also Wolff*, 418 U.S. 539 (disciplinary committee was

sufficiently impartial so as not to violate due process). In order to insure impartiality, the DHO may not be a victim, witness, investigator, or otherwise significantly involved in the incident. 28 C.F.R. § 541.8(b). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." *Meyers*, 492 F.2d at 306. The *Meyers* case involved disciplinary action against members of a prisoners' committee involved in the work stoppage. During the work stoppage, an associate warden had considerable contact with the prisoners' committee. Thereafter, the same associate warden served on the disciplinary committee. The *Meyers* court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal. 492 F.2d at 305–07. In the matter *sub judice*, the DHO did not have a direct personal or otherwise substantial involvement, such as major participation in the investigation or in the circumstances underlying the charge. Hence, this claim is without merit.

Lastly, Bonner takes issue with the severity of sanctions. The sanctions permitted upon a finding of guilt of a "Greatest Severity Level Prohibited Acts" offense include, *inter alia*, forfeit and/or withhold earned statutory good conduct time of up to 100% and/or terminate or disallow extra good time, disallowance of

between 50% and 75% of good conduct time credit available for a year, up to twelve months of disciplinary segregation, loss of privileges and a monetary fine. 28 C.F.R. § 541.3. The sanctions imposed on Bonner, specifically, sixty days of disciplinary segregation, forty-one days of the disallowance of good conduct time, forfeiture of 108 days of non-vested good conduct time, loss of privileges and a monetary fine are all within the limits prescribed for the introduction of narcotics offense.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense. *See Rummel v. Estelle*, 445 U.S. 263, 271–74 (1980)." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The penalties imposed, extended confinement in administrative detention during the investigation and prior to the DHO hearing, loss of good conduct time, loss of privileges, disciplinary segregation, and a monetary fine do not work an "atypical and significant hardship" on Bonner and do not serve to extend his confinement beyond the expected parameters of his sentence. *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

## III. CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus will be denied.

A separate Order will enter.